UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN HARVEY, ) | CASE NO. 3:21-cv-771 (KAD) |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| TOWN OF GREENWICH, ) | SEPTEMBER 11, 2023 |
| *Defendant*. ) | |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 47)**

Kari A. Dooley, United States District Judge:

This employment discrimination action arises out of Plaintiff John Harvey being bypassed for appointment as Commissioner of Human Services for the Town of Greenwich ("Greenwich" or "Defendant"). Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (Count One), 42 U.S.C. § 1981 as made actionable by 42 U.S.C. § 1983 (Count Two), Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.* (Count Three), and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(b)(1) (Count Four). Principally, Plaintiff alleges that he was not hired for the position of Commissioner of Human Services due to his age and race. Pending before the Court is Defendant's motion for summary judgment, which Plaintiff opposes. For the following reasons, the motion for summary judgment is GRANTED. (ECF No. 47)

**Standard of Review**

The standard under which courts review motions for summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing

law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Facts**

The following facts are taken from Defendant's Local Rule 56(a)(1) Statement of Material Facts ("Def. LRS," ECF No. 47-2), Plaintiff's response thereto ("Pl. LRS," ECF No. 55), and the parties' exhibits.

The Greenwich Department of Human Services ("GDHS") provides direct services to Greenwich residents and is led by a Commissioner of Human Services. Def. LRS at 1 ¶ 1. The Greenwich Board of Human Services is responsible for hiring the Commissioner of the GDHS. Def. LRS at 1 ¶ 2.

Plaintiff is a 61-year-old Caucasian man. Pl. LRS at 31 ¶ 1. He holds a bachelor's degree in sociology, a master's degree in social work, and is a State of Connecticut licensed clinical social worker. Pl. LRS at 31 ¶¶ 2–4. Greenwich hired Plaintiff as a Case Manager with the GDHS in 2013. Def. LRS at 1– 2 ¶ 4. In 2019, Plaintiff was appointed interim Director of Case Management, and subsequently applied for and was made the permanent Director. *Id.*

In February 2020, Alan Barry announced his retirement as the Commissioner of Human Services. Def. LRS at 2 ¶ 5. Greenwich Human Resources posted the job opening for the position on February 21, 2020 with a closing date of June 17, 2020. Def. LRS at 2 ¶ 6. An outside search

firm, The Strategy Group, was hired to assist in the search. Def. LRS at 2 ¶ 7. The Strategy Group met with outgoing Commissioner Barry, the Greenwich Board of Human Services, and senior and mid-level GDHS staff members to understand the role of Commissioner and the qualities the Board was looking for in a new Commissioner. Def. LRS at 2 ¶ 8.

Thirty people applied for the Commissioner position. Def. LRS at 2 ¶ 9. Plaintiff was the only internal candidate who applied. Def. LRS at 2 ¶ 10. The Strategy Group reviewed the applications and selected 13 applicants, including Plaintiff, to have an exploratory interview. Def. LRS at 2 ¶ 11. Karen Brennan, a senior consultant with the Strategy Group, conducted the exploratory interviews. Def. LRS at 3 ¶ 12. Following the exploratory interviews, Brennan advanced 9 candidates, including Plaintiff, to interview with the search committee. *Id.*

Five members of the Board of Human Services volunteered to be on the search committee: Annalisa Nash, Alan Gunzburg, Abbott Jones, Natalie Queen, and Winston Robinson. Def. LRS at 3 ¶ 17. The search committee interviewed each of the nine candidates over Zoom. Def. LRS at 4 ¶ 24. Following Plaintiff's interview, the search committee thought that Plaintiff "is very qualified," had "the heart of a social worker" and understands social work, had "many of the advantages" the committee is looking for (such living in the community and working for the department), would have no "downtime to step into the role," had a "[g]ood depth of knowledge of clients and nonprofit agencies," had "grown in his presence," and was "[k]nowledgeable of [the] department and [its] needs." Def. LRS at 4–5 ¶ 27; Exhibit H, ECF No. 47-11 at 14. The committee also shared a concern regarding Plaintiff's ability to "work a budget and a room" and further observed that he may "need a bit more management under his belt before he takes on this role." *Id.*[1]

---

[1] Plaintiff strongly disputes in his Local Rule Statement the factual accuracy, perceived or otherwise, of the statements and concerns expressed by the search committee. *See* Pl. LRS at 9–10 ¶ 27. However, he does not dispute

Plaintiff was thereafter one of only five candidates who advanced to a second round of interviews. Def. LRS at 5 ¶ 28. The five candidates included two Caucasian males, one Hispanic female, one Caucasian female, and one African American female. Def. LRS at 5 ¶ 30. For the second round interview, each candidate was asked to prepare a presentation on their goals as Commissioner and strategies to achieve those goals, as well as what they saw as the most significant challenges that GDHS would face in the coming years and how GDHS could prepare for those challenges. Def. LRS at 5 ¶ 32. Plaintiff had never done a PowerPoint presentation and reached out to Brennan for support. Def. LRS at 5 ¶ 33. Four of the five Board members were present for Plaintiff's second interview (Nash was unavailable). Def. LRS at 6 ¶ 34.

Plaintiff struggled in his second interview and had trouble operating his PowerPoint presentation. Def. LRS at 6 ¶ 35. Jones and Queen expressed that while Plaintiff had some good ideas for GDHS, he was not ready to be Commissioner. Def. LRS at 6 ¶¶ 36–37. Brennan believed that Plaintiff was not adequately prepared for the second interview. Def. LRS at 7 ¶ 40. After completing the second round of interviews, the committee agreed that the top three candidates were Demetria Nelson (an African American woman), Margaret Watt (a Caucasian woman), and Jim Vivier (a Caucasian man). Def. LRS at 8 ¶ 46. The committee then selected Nelson and Watt as their final two candidates. Def. LRS at 8 ¶ 47.

Jones assessed that Nelson and Watt were stronger candidates than Plaintiff because they had more management experience; Queen felt that Nelson and Watt were the top candidates because they had experience running large departments, offered great strategies to improve the departments they worked in, were great communicators, had success working in different groups, and had researched and understood GDHS's current work; and Nash was of the view that Nelson's

---

that these statements and concerns were actually expressed by the search committee. Accordingly, they are properly considered by the Court herein.

and Watt's experience in managing larger departments and in more urban environments made them better suited to the role of Commissioner than Plaintiff. Def. LRS at 8 ¶¶ 49–51. Thereafter, after several rounds of voting, the search committee unanimously selected Nelson as the final candidate. Def. LRS at 9 ¶¶ 53, 55.

Sometime after Plaintiff was eliminated from the selection process, but before Nelson was selected as the final candidate, Gunzburg remarked to one GDHS staff member that "ten years ago, we hired a white male, Alan [Barry] got us to this point, but we need someone else to take it to the next level." Pl. LRS at 34 ¶ 27. Gunzburg also told another GDHS staff member around the same time that "if it were ten years ago, we would have hired another old white guy." Pl. LRS at 34 ¶ 28.

On June 30, 2020, the full Greenwich Board of Human Services interviewed Nelson and thereafter voted to appoint her GDHS Commissioner. Def. LRS at 9 ¶¶ 58–59.

**Discussion**

*Race Discrimination – Title VII & CFEPA*

"Title VII makes it 'an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . [race].'" *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 199 (2d Cir. 2017) (quoting 42 U.S.C. § 2000e-2(a)(1)). Discrimination claims under Title VII are analyzed using the *McDonnell Douglas* burden-shifting framework. *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006).[2] The *McDonnell Douglas* test proceeds as follows: (1) plaintiff

---

[2] Likewise, "CFEPA claims are analyzed in the same manner as those under Title VII." *Sample v. Wal-Mart Stores, Inc.*, 273 F. Supp. 2d 185, 189 (D. Conn. 2003), *aff'd*, 108 F. Appx. 15 (2d Cir. 2004) (summary order) (citing *Brittell v. Dep't of Correction*, 247 Conn. 148, 164 (1998)).

6

"bears the minimal burden of setting out a *prima facie* discrimination case," (2) if plaintiff satisfies its burden, plaintiff "is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action," and (3) if the defendant proffers a legitimate, nondiscriminatory reason, "the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." *Id.* (internal quotation marks and citations omitted).

To establish a *prima facie* case based on an alleged discriminatory failure to hire, a plaintiff must allege that (1) he is a member of a protected class; (2) he applied and was qualified for the position; (3) he was rejected for the position; and (4) the rejection of the plaintiff's application occurred under circumstances giving rise to an inference of discrimination. *Lomotey v. Conn. Dept. of Transp.*, 355 F. Appx. 478, 480 (2d Cir. 2009). If a plaintiff does not have direct evidence of discriminatory intent, plaintiff may present evidence of disparate treatment, such as evidence that his employer treated him less favorably than similarly situated employees outside of his protected class, to support an inference of discriminatory intent. *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 89–90 (2d Cir. 2019) (citing *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)). "[T]he fourth element is also established if the employer fills the position with a person outside the protected class who was similarly or less qualified than the plaintiff." *Yu v. New York City Hous. Dev. Corp.*, 494 F. Appx. 122, 125 n.4 (2d Cir. 2012)

Defendant seeks summary judgment on Plaintiff's race discrimination claim on the basis that Plaintiff cannot establish a *prime facie* case, specifically that the decision not to hire him occurred under circumstances giving rise to an inference of discrimination. Alternatively, Defendant asserts that even if Plaintiff can establish a *prima facie* case, there were legitimate non-

discriminatory reasons for not appointing Plaintiff as Commissioner and there is no evidence of pretext.

Plaintiff has met his burden of establishing a *prima facie* case. Plaintiff, a Caucasian man, is a member of a protected class, he applied and was qualified for the position of Commissioner, he was not hired, and the position went to Nelson, an African American woman.[3] *See Payne v. Conn. Dept. of Transportation*, 267 F. Supp. 2d 207, 210–11 (D. Conn. 2003); *see also Haughton v. Cromwell*, No. 3:19-cv-359 (MPS), 2021 WL 4248858, at *5 (D. Conn. Sept. 17, 2021) ("Promotion of a similarly situated employee not in the plaintiff's protected group is sufficient to support an inference of discrimination.").

The burden then shifts to Defendant to proffer a legitimate non-discriminatory reason for Plaintiff's non-selection. Here, Defendant asserts that Nelson performed well in her interview and had the experience and qualifications the Board was looking for in a Commissioner, while the same could not be said of Plaintiff.

"Employers may use interview performance as a deciding factor in an employment decision." *Haughton*, 2021 WL 4248858, at *6; *see also Byrnie v. Cromwell Bd. of Educ.*, 243 F.3d 93, 104 (2d Cir. 2001) ("[T]here is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview."). When the explanation, "offered in clear and specific terms, is reasonably attributable to an honest even though partially subjective evaluation of qualifications, no inference of discrimination can be drawn." *Byrnie*, 243 F.3d at 104. Relying on subjective criteria is especially permissible where an

---

[3] It is worth noting that Plaintiff was eliminated in the hiring process at a time when not only Nelson, but also Watt and Vivier were assessed as stronger candidates. As noted, both are Caucasian and one is a Caucasian man. Although the Court has found that Plaintiff met his burden of establishing a *prime facie* case based on the decision to hire Nelson, the advancement in the process of others of the same race as Plaintiff at the time he was eliminated is not insignificant.

employee is being considered for a supervisory position. *Vidal v. Metro-North Commuter R. Co.*, No. 3:12-cv-248 (MPS), 2014 WL 3868027, at *7 (D. Conn. Aug. 6, 2014) (citing *Robertson v. Sikorsky Aircraft Corp.*, No. 3:97-cv-1216, 2000 WL 33381019, at *3 (D. Conn. July 5, 2001)). Here, Nelson did well in her second interview and presentation, while Plaintiff struggled. Indeed, throughout the process, the search committee expressed concerns regarding his ability to "work a room" and manage a sizeable budget, among others. Nelson presented no such concerns. Plaintiff does not dispute that he struggled in his second interview other than to say that his interview was "hostile." *See* Pl. LRS at 34 ¶ 26. Defendant has therefore offered a clear and specific, nondiscriminatory reason why Plaintiff was not selected as a finalist for the Commissioner position. The burden now shifts back to Plaintiff to establish that this proffered reason is pretext for discrimination.

In this vein, to the extent Plaintiff asserts that he was more qualified than Nelson, the Second Circuit has made clear the difficulty a plaintiff faces when relying on superior qualifications alone to support a claim for unlawful discrimination. To defeat a motion for summary judgment based on qualifications alone, "the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Moy v. Perez*, 712 F. Appx. 38, 42 (2d Cir. 2017). *See also Johnson v. Conn. Dept. of Admin. Servs.*, 972 F. Supp. 2d 223, 253 (D. Conn. 2013) ("[An employer] has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination.").

Here, Plaintiff was, at the time, in a managerial position with the GDHS, had his master's degree in social work, was a licensed social worker, and had prior experience working for non-profit organizations that were clients of GDHS. Nelson had experience working for a large agency in New York City, had previously worked for GDHS, had supervisory and management experience, had overseen a larger number of cases, and had handled a multi-million-dollar budget. Any disparity between Nelson and Plaintiff is not so great that "no reasonable person, in the exercise of impartial judgment" would have selected Nelson over Plaintiff.

In circumstances such as those present here, whether a plaintiff "can raise a genuine issue of material fact regarding pretext turns on whether a reasonable juror could find that the ratings given to each applicant" through the interview and committee process were not credible, "such that they masked other, discriminatory reasons" for the failure to select a plaintiff for a particular position. *Vidal*, 2014 WL 3868027, at *6. "To demonstrate pretext, Plaintiffs must point to evidence that their ratings were not credible or did not accurately reflect their performance." *Id.* As noted above, Plaintiff has not done so. *Compare Byrnie*, 243 F.3d at 103–04 (plaintiff able to establish pretext in failure to promote case where the search committee relaxed the educational requirements of the position to allow another candidate to continue in the job search; ignored that the other candidate's application was incomplete; misstated plaintiff's qualifications; and shifted its justification for not hiring plaintiff); *with Pippin v. Vernon*, 660 F. Supp. 2d 354, 366 (D. Conn. 2009) (finding no pretext when plaintiff failed to proffer evidence that undercuts the credibility of the interview panelists).

Nonetheless, Plaintiff argues that Gunzburg's statements that, unlike ten years ago (when the Board hired Barry to be Commissioner), the Board would not select an "old white guy," are sufficient to show that Defendant's proffered legitimate non-discriminatory reasons are pretext.

10

District courts in this Circuit generally examine four factors when assessing whether an isolated statement is probative of discriminatory intent or whether it is an insignificant "stray remark": "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 124, 149 (2d Cir. 2010). Although Gunzburg's comments may satisfy the second, third, and fourth factors, an issue the Court need not decide, he was just one member of a five-member search committee, which itself was not the final decision maker.[4] There is no evidence that the other members of the search committee held similar views, that Gunzburg made similar statements to any other member of the search committee, or that Gunzburg led or otherwise influenced the search committee's decision to choose Nelson as their final candidate or to eliminate Plaintiff from contention. Further, it is undisputed that the full Board of the GDHS was the final decision maker and appointed Nelson only after they interviewed her themselves. It is well established that "the stray remarks [even] of a decision-maker, without more, cannot prove a claim of employment discrimination." *Abdu–Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001).[5] Moreover, because stray remarks alone "cannot support an inference of discrimination to establish a *prima facie* case, it is not surprising that stray remarks are also insufficient to demonstrate that an employer's legitimate, non-discriminatory reason for its action

---

[4] As noted by Defendant, the comments were made after Plaintiff had already been eliminated from the process, and therefore the comments could be construed as a mere statement of fact because it had already been determined that a white male or an older white male was not going to be hired.

[5] Plaintiff's suggestion that Gunzburg was the chair of the search committee is supported only by the opinion of one board member who perceived that Gunzburg was taking over the search process, *see* Petrone Dep., ECF No. 55-47 at 12:23–25, and is otherwise contradicted with admissible evidence in the record that the search committee did not have a formal chair but that Jones took charge of the process because he was, at the time, Chair of the Board of GDHS. *See* Jones Aff., ECF No. 47-3 at 3 ¶ 10.

11

is pretext for discrimination." *Hasemann v. United Parcel Serv. of America, Inc.*, No. 3:11-cv-554 (VLB), 2013 WL 696424, at *9 (D. Conn. Feb. 26, 2013) (collecting cases).

Last, Plaintiff argues that Defendant failed to follow its own policies when it extended the job posting closing date from May 8, 2020 to June 17, 2020, and that the extension is evidence of pretext. Save for the fact that Nelson is African American, absent from Plaintiff's narrative is any evidence that the actions taken by Defendant in extending the job posting closing to June 17, 2020 was undertaken with any discriminatory intent or motive. It is Plaintiff's view that the extension was designed to keep Plaintiff from becoming Commissioner. But he puts forth only his opinion to support this claim. He offers no evidence which might reveal such an insidious plot such that a fact finder would have to resort to impermissible speculation and conjecture to reach such a conclusion. *See Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999) ("[nonmovant's] assertion that the [movant] enforced the ordinance against it with an impermissible motivation is sheer 'conjecture and speculation' that is insufficient to withstand the [movant's] motion for summary judgment").

For all of the above reasons, no reasonable juror could conclude that Defendant's failure to hire Plaintiff as Commissioner was motivated by discriminatory intent. Defendant's motion for summary judgment as to Counts One and Four is granted.

*Race Discrimination — 42 U.S.C. §1981*

Plaintiff also brings a cause of action for race discrimination pursuant to 42 U.S.C. § 1981. Section 1981 provides, in relevant part, that all people "shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." Defendant asserts that Plaintiff, as a white man, cannot assert claims under §1981.

In *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273 (1976), two white plaintiffs brought claims under § 1981 against their employer for discrimination when they were discharged for certain misconduct while a black co-worker, who had committed the same misconduct, was not discharged. 427 U.S. at 275–276. The Supreme Court unequivocally held that the white workers could bring racial discrimination claims under §1981 because the phrase "as is enjoyed by white citizens" merely emphasizes "the racial character of the rights being protected" and the legislative history is "clear that that phrase was not intended to have the effect of eliminating from the bill the prohibition of racial discrimination against whites." *Id.* at 285–96.[6]

Notwithstanding, in *Albert v. Carovano*, 851 F.2d 561, 572–73 (2d Cir. 1988) the Second Circuit, in discussing the historical purpose of § 1981, held that there are limited circumstances under which non-minority plaintiffs are permitted to bring claims under the statute. *See also Burbank v. Office of Atty. Gen. of Conn.*, 240, F. Supp. 2d 167, 175 (D. Conn. 2003); *Weber v. FujiFilm Medical Systems U.S.A., Inc.*, 854 F. Supp. 2d 219, 234 (D. Conn. 2012). And the Second Circuit has thereafter oft stated that a Plaintiff bringing a claim under § 1981 must show that "he is a member of a racial minority." *See e.g.*, *Broich v. Incorporated Vill. of Southampton*, 462 F. Appx. 39, 44 (2d Cir. 2012) (summary order); *Lauture v. IBM,* 216 F.3d 258, 261 (2d Cir. 2000). However, in *Broich,* the Second Circuit also acknowledged that §1981 protects all people, "including whites, from discrimination on the basis of race." *Broich*, 462 F. Appx. at 42 n.1 (citing

---

[6] *See also Gratz v. Bollinger*, 539 U.S. 244, 275–76 & n.23 (2003) (holding that a university admissions policy violated § 1981 and stating that § 1981 was "meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race") (quoting *McDonald*, 427 U.S. at 295–96)); *Krohn v. Harvard Law School*, 552 F.2d 21, 25 (1st Cir. 1977) ("[S]ection 1981 forbids racial discrimination against white persons as well as against non-whites." (quoting *McDonald*)); *Fiedler v. Marumsco Christian School*, 631 F.2d 1144, 1149–50 (4th Cir. 1980) (same); *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971 (10th Cir. 1979) (same); *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981) (same); *Clemente v. Allstate Ins. Co.*, No. 2:22-cv-56 (CCW), 2022 WL 17976324, at *7 (W. D. Pa. Dec. 28, 2022) (rejecting argument that § 1981 requires a plaintiff to be "a member of a racial minority" because the Supreme Court in *McDonald* held that § 1981 applied "to racial discrimination in private employment against white persons" and therefore white plaintiffs were not precluded from bringing a § 1981 claim).

*McDonald*).[7] The genesis of this apparent contradiction in the law is not clear to the undersigned but need not be further explored or resolved here because for much the same reasons Plaintiff's Title VII claims fail, so too does his §1981 claim.

To prevail on a § 1981 claim, "a plaintiff must . . . prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). A claim of discrimination pursuant to § 1981 thus requires a showing of intentional discrimination. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). For the previously articulated reasons, Plaintiff is unable to show that the decision not to appoint him Commissioner was motivated by race, let alone that race was a but-for factor in that decision. Defendant's motion for summary judgment as to Count Two is therefore granted.

*Age Discrimination — ADEA & CFEPA*

"Under the ADEA, it is 'unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age [or] to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age[.]'" *Mendillo v. Prudential Ins. Co. of Am.*, 156 F. Supp. 3d 317, 337 (D. Conn. 2016) (quoting 29 U.S.C. § 623(a)). Similarly, the CFEPA provides that "[i]t shall be a discriminatory practice in violation of this section" for an employer "to refuse to hire or employ or to bar or to discharge

---

[7] The plaintiff's race (Caucasian) was not raised as a defense in *Broich*. And notwithstanding the statement about the plaintiff having to be a racial minority, the Second Circuit reversed the district court's entry of summary judgment against the plaintiff, a white police officer, who brought a failure to promote claim because his employer promoted a black coworker with less seniority to a detective position instead of him. *Broich*, 462 F. Appx. at 44. The case was therefore remanded for an adjudication on the merits.

from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . age[.]" Conn. Gen. Stat. § 46a-60(b)(1).[8]

"In the Second Circuit, ADEA discrimination claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), as modified by *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L.Ed.2d 119 (2009)." *Mendillo*, 156 F. Supp. 3d at 337–38. In order to set forth a *prima facie* case of age discrimination, Plaintiff "must show (1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Mendillo*, 156 F. Supp. 3d at 338 (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). Plaintiff's burden at this stage is "de minimis." *Id.*

> Once this [initial] burden is met, the defendant must then articulate 'some legitimate, nondiscriminatory reason' for its action. The defendant need not persuade the court that it was actually motivated by the proffered reason. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. When the employer meets its burden, the plaintiff can no longer rely on the prima facie case, but must prove that the employer's proffered reason was a pretext for discrimination[.] Since the Supreme Court's decision in *Gross* . . ., eliminating the mixed-motive analysis as to ADEA claims, a plaintiff bringing a disparate-treatment claim pursuant to the ADEA satisfies this burden by presenting facts, which taken in his favor, suffice to show that a triable issue exists as to whether his age was a 'but for' cause of his termination.

*Delaney v. Bank of Am. Corp.,* 766 F.3d 163, 168 (2d Cir. 2014) (internal citations, quotation marks, ellipsis, and alterations omitted).

---

[8] "[T]he Connecticut Supreme Court looks to federal precedent when interpreting and enforcing the CFEPA." *Weichman v. Chubb & Son*, 552 F. Supp. 2d 271, 282 (D. Conn. 2008) (quoting *Farrar v. Town of Stratford*, 537 F. Supp. 2d 332, 348 (D. Conn. 2008)); *see also, e.g.*, *Patino v. Birken Mfg. Co.*, 304 Conn. 679, 689 (2012) ("Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws.") (quoting *Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 407 (2008)).

Here, the parties do not dispute that Plaintiff is in the protected age group, that he was qualified for the position of Commissioner, and that he experienced an adverse employment action in the form of a failure to hire. The dispute here is whether Plaintiff's age was the but-for cause of the adverse employment action. Defendant asserts that Plaintiff cannot meet his initial burden insofar as there is insufficient evidence to give rise to an inference of age discrimination. Alternatively, Defendant argues that Plaintiff cannot set forth any evidence that the decision to hire Nelson instead of Plaintiff was pretext for age discrimination or that age discrimination was the but-for cause of the decision not to hire Plaintiff. In response, Plaintiff relies upon Gunzburg's statements that if the hiring happened ten years ago, the Board would have hired an "old white guy," and the fact that Nelson is significantly younger than him.

Assuming, without deciding, that Nelson's younger age is sufficient to meet Plaintiff's initial burden, the Court's inquiry then becomes "whether 'the evidence, viewed in the light most favorable to the plaintiff, would permit a jury to find . . . that age was the 'but-for' cause of the challenged adverse employment action.'" *Delaney*, 766 F.3d at 168–69 (quoting *Gorzynski*, 596 F.3d at 106) (internal quotation marks omitted).

First, Plaintiff's reliance on Gunzburg's statement that "if it were ten years ago, we would have hired another old white guy" to support his claim of age discrimination is again, misplaced. As discussed above, the Defendant has offered legitimate non-discriminatory reasons for not hiring Plaintiff. And for the reasons discussed above, Gunzburg's statement is the sort of "stray remark" that cannot establish pretext in the face of this legitimate nondiscriminatory reason. Accordingly, no reasonable juror could conclude, based upon this stray remark, that Plaintiff was not hired as Commissioner but-for his age.[9] *See Tomassi v. Insignia Fin. Group, Inc.*, 498 F.3d 111, 114 (2d

---

[9] The Court also concludes, relying on the same analysis in Plaintiff's Title VII race discrimination claim as well as for his ADEA claim, that the stray remark was not a motivating factor in Defendant's failure to hire Plaintiff as

Cir. 2007) ("[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark."); *see also Cardona v. Willimantic Housing Authority*, No. 3:19-cv-00235 (MPS), 2021 WL 849020, at *12 (D. Conn. Mar. 5, 2021) (finding that stray remarks, particularly those made by persons without hiring authority, do not establish discriminatory intent of the employer).

Plaintiff is therefore left only with the fact that Nelson is younger than him. Disparity in age alone is insufficient to create a genuine issue of material fact as to whether Defendant's failure to hire Plaintiff as Commissioner was the result of age discrimination. *See Angione v. Sikorsky Aircraft Corp.*, 199 F. Supp. 3d 628, 639 (D. Conn. 2016) ("Standing alone, the fact that Sikorsky may have hired someone who was younger than Angione does not raise an inference of discrimination."); *O'Sullivan v. New York Times*, 37 F. Supp. 2d 307, 319 (S.D.N.Y. 1999) ("[A]llegations of replacement by younger workers do not, without more, prove discrimination.") (citing cases). Defendant's motion for summary judgment as to Counts Three and Four is granted.

**Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. (ECF No. 47) The Clerk of the Court is directed to enter judgment in favor of Defendant and to close this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of September 2023.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE

---

Commission to support his claim of age discrimination pursuant to the CFEPA. *See Wallace v. Caring Solutions, LLC*, 213 Conn. App. 605, 626 (2022) (holding that "the motivating factor test, and not the but-for test, remains the applicable causation standard for claims of discrimination under CFEPA, regardless of the federal precedent established in *Gross* and its progeny").